# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | | |
|---|---|---|
| BILLY JOE SMITH, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 2:11-cv-342-JRG-DHI |
| | ) | |
| GERALD MCALLISTER, Warden, | ) | |
| | ) | |
| *Respondent*. | ) | |

## <u>MEMORANDUM OPINION</u>

This is *a pro se* prisoner's application for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by Billy Joe Smith ("Smith" or "Petitioner"), who is currently serving an effective sentence of 135 years with the Tennessee Department of Correction (Doc. 1). Smith was indicted in Unicoi County on two counts of aggravated rape and one count of aiding and abetting aggravated rape and in Carter County for one count of aggravated robbery and one count of aggravated kidnapping and was convicted of all counts (Doc. 1, Pet.).[1]

Warden Gerald McAllister filed an answer to the petition, arguing that relief is not warranted on any of Smith's claims and, in support of his arguments, submitted copies of the state court record (Docs. 13 and 14, Addenda 1-4). Smith replied to the answer (Doc. 15) and, with leave of the Court, Warden McAllister filed a surreply (Doc. 20). Smith also replied to the surreply, without first seeking the Court's permission, *see* Fed. R.Civ. P.7(a), but, in the exercise of its discretion, the Court will consider relevant parts of the submission (Doc. 21). The Court will not consider, however, any new claims for relief offered for the first time in this submission

---

[1] The cases were consolidated for trial in Unicoi County. *Smith v. State*, No. E2010-00282-CCA-R3-PC, 2011 WL 3897702, at *4 n.6 (Tenn. Crim. App. Sept. 6, 2011), *perm. to app. denied*, (Tenn. 2011).

(*Id.* at 47-52, alleging a claim that counsel gave ineffective assistance by stipulating to the admission of evidence).

For reasons which appear below, this petition will be **DENIED**.

## I.    PROCEDURAL HISTORY

On November 5, 1998, Petitioner's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA") and the Tennessee Supreme Court ("TSC"). *State v. Smith*, No. 03C-01-9508-CC-00250, 1997 WL 53453 (Tenn. Crim. App. Feb. 11, 1997), *aff'd sub nom. Ruff v. State*, 978 S.W.2d 95 (Tenn. 1998).    Petitioner then challenged his convictions under Tennessee's Post-Conviction Procedure Act, by filing, on November 16, 1998, a petition for post-conviction relief.  *Smith v. State*, No. E2010–00282–CCA–R3–PC, 2011 WL 3897702, at *2 (Tenn. Crim. App. Sept. 6, 2011).

After an extensive delay and a full evidentiary hearing, the state post-conviction court denied the petition and the TCCA affirmed the denial.  *Id.*, 2011 WL 3897702, at *2-5, and *11. Petitioner's request for permission to appeal was denied by the TSC.  There followed this instant § 2254 habeas corpus application.

## II.    FACTUAL BACKGROUND

The factual recitation is taken from the TCCA's opinion on appeal of Petitioner's post-conviction case.

> During the early morning hours of November 29, 1992, the [Petitioner] and a co-defendant, Terry Dean "Snuffy" Snead, entered a convenience store in Carter County.  The female clerk asked the [Petitioner] if she could help him.  He stated he was there to rob her.  The [Petitioner] and Snead both brandished knives. The [Petitioner] told the clerk he wanted all the money in the store, and, if she did not cooperate, he would kill her.  The clerk placed the proceeds of the cash register, approximately $500, in a paper sack and gave it to the [Petitioner].  The [Petitioner] and Snead

2

forced the victim at knife point to accompany them. She was forced into the [Petitioner's] vehicle.

The [Petitioner] and Snead took the victim to a cemetery near Limestone Cove in Unicoi County. They forced her to drink a beverage containing alcohol. Both the [Petitioner] and Snead drank from the bottle. The [Petitioner] raped the victim at knife point on two occasions. Snead, who was also armed, raped the victim on one occasion. The [Petitioner] abetted the rape committed by Snead. They remained at Limestone Cove until dawn.

The [Petitioner] drove to a Roadway Inn in Johnson City. It was the intention of both the [Petitioner] and Snead to rape the victim at the motel. When Snead asked an employee of the motel if a room was available, he told Snead there was a room available, but he was too intoxicated to lease a room. Snead exited the vehicle for the purpose of fighting the employee. The victim exited the vehicle. The [Petitioner] caught her. He told the employee it was just a lover's spat. The victim broke loose a second time and ran to the motel's office. She called the police. The [Petitioner] and Snead got into the car and drove away.

The victim made a courtroom identification of the [Petitioner] as the perpetrator of the offenses, and she identified the knife the [Petitioner] used in committing these offenses. DNA testing and analysis established the semen found in the victim's vagina matched the blood of the [Petitioner]. The victim's hair was found inside the [Petitioner's] motor vehicle. Fibers consistent with the shirt the [Petitioner] was wearing when committing the crimes were found on the victim's shirt and jeans.

*Smith v. State,* 2011 WL 3897702, at *1-2 (footnote omitted)

On these facts, the jury convicted Smith of all charges alleged in the indictments.

## III.    DISCUSSION

Smith's § 2254 petition for a writ of habeas corpus raises twelve (12) grounds for relief

(Doc. 1). The Warden argues, in his answer, that Petitioner is not entitled to relief with regard to

the state court decisions rejecting one of his grounds on the merits, given the deferential

standards of review set forth in 28 U.S.C. § 2254. With respect to the eleven remaining claims,

3

the Warden maintains that they are barred from habeas corpus review due to Smith's state procedural defaults or, alternatively, because they are not cognizable federal claims.

The Court agrees with respondent Warden concerning Petitioner's entitlement to habeas corpus relief. The claims have been organized into three categories for purposes of discussion. The first category encompasses the non-cognizable claims; the second the procedurally defaulted claims. The third category contains the sole claim which was adjudicated in the Tennessee courts.

### A. Non-Cognizable Claims[2]

#### a. Illegal Search (Ground Four)

The fourth claim in Smith's § 2254 petition is that evidence was admitted against him at trial, although the evidence was obtained as a result of an illegal search of the Smith family cemetery by police officers operating outside their jurisdiction, who did not first secure a search warrant or consent. Respondent maintains that this claim was first raised in Smith's *pro se* state post-conviction petition, as well as in his amended post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent further argues that the TCAA held the claim to have been waived, which constitutes a procedural bar to federal review.

The Court finds, however, that the Petitioner's Fourth Amendment claim is not cognizable in these proceedings. This is so because a petitioner may not raise issues challenging the legality of a search and seizure on federal habeas review, if he had a full and fair opportunity to present the claims in state court and if the presentation of the claims was

---

[2] Oddly enough, some of the claims in this category could possibly fit within one or the other remaining categories as well.

not frustrated by any failure of the state's corrective processes. *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Stone v. Powell*, 428 U.S. 465, 494-95 (1976)), *cert. denied*, 531 U.S. 1089 (2001). It matters not whether, in fact, he took advantage of his opportunity to litigate his claims, so long as he had that opportunity. *Ortiz- Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996).

In this case, Petitioner does not assert that he did not have an adequate opportunity to litigate his claim or that a failure in the state mechanism for presenting it frustrated his ability to raise the claim—indeed, Tennessee courts will hold a suppression hearing if a defendant makes a Fourth Amendment challenge to the admission of evidence. *See Smith v. State*, 160 S.W.3d 526, 532 n.2 (Tenn. 2005). And in fact, the post-conviction court entertained this claim and found that Smith lacked standing to assert the Fourth Amendment violation. *See Smith v. State,* No. E2010–00282–CCA–R3–PC, 2011 WL 3897702, at *8 n.8 (Tenn. Crim. App. Sept. 6, 2011). Therefore, Smith's illegal search claim is not reviewable in these federal habeas corpus proceedings. *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).

> **b. Defective Indictment- Endorsement (Ground V)**
> **c. Defective Indictment- Incorrect Code Citations (Ground VI)**

These claims are combined for purposes of discussion.

Smith first challenges his indictment on the basis that neither the foreperson of the Unicoi County grand jury nor its members endorsed each count, rendering the indictment improper and void. The Warden asserts that this claim was first raised in Smith's amended state post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his

petition. Respondent further argues that the TCAA held the claim to have been waived, which constitutes a procedural bar to federal review.

Petitioner maintains, in the first part of Ground Six, that Count Two in his Carter County indictment, which charged him with the commission of aggravated kidnapping, contained an incorrect criminal code citation to the offense of kidnapping, rather than to the criminal code section for aggravated kidnapping. Next, Smith claims that Count Three in his Unicoi County indictment, which alleged that he aided and abetted the commission of aggravated rape, contained a reference to the criminal code section for the underlying offense of rape, rather than to the proper criminal code sections for aiding and abetting an aggravated rape. Petitioner further contends that, in violation of his rights to due process and equal protection, the prosecution was allowed to amend the indictments to add the correct statutory reference without his agreement and without having the charges re-presented to the grand jury.

Respondent asserts that the second part of Ground Six was raised in Smith's amended post-conviction petition and pressed on appeal. The TCCA observed that the post-conviction court had found the issue meritless in an oral ruling and concluded that there was no need to revisit the issue in the post-conviction appeal. Respondent points out that the state courts' disposition of the claim was based on state law, which does not require an indictment to reference the particular code section that establishes the offense; considers any such reference to be mere surplusage; and holds that a clerical error in an indictment does not render it void, as long as the offense is correctly stated in the charging instrument.

Respondent argues that, since Smith has not cited to any Supreme Court case ruling that the amendment of an indictment to include a correct reference to the statutory violation, but which otherwise provides notice of the offense for which a criminal accused is charged violates

6

due process, this habeas court must defer to the state court's disposition of the second part of Petitioner's Ground Six claim. The Warden also observes that Smith has not claimed that he lacked sufficient notice that he was charged with aiding and abetting an aggravated rape.

The amendment of an indictment in state court, generally, does not present a cognizable claim. *See Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986) (noting that "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus"). While a state defendant has no constitutional right to be charged in an indictment, *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984), no matter what method a state selects to charge a criminal offense, a defendant has a right to receive "notice of the specific charge." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (holding that "notice of the specific charge . . . [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal").

As respondent warden correctly maintains, Smith has not alleged that he lacked notice of the aggravated kidnapping, aiding and abetting aggravated kidnapping, or any of the other charges, only that the statutory citations were erroneous or that endorsements were missing from the Unicoi County indictments. Because the issue was decided as a matter of state law and because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S.62, 68 (1991), these claims are not cognizable federal claims.

Even if the indictment claims as alleged by Petitioner were cognizable, his failure to point to any Supreme Court precedent which shows the state court's adjudication of those claims to be contrary to or an unreasonable application of the precedent means that the state court decision must remain undisturbed because it passes the tests in 28 U.S.C. § 2254(d)(1).

### d. Evidentiary Error –Admission of DNA Proof (Ground XI)

In Ground Nine, Smith alleges that the trial court erred by permitting DNA evidence to be introduced against him at trial, even though the sample was contaminated. The challenged proof encompassed the results of DNA testing of semen found in the victim's vagina which matched Petitioner's blood. Respondent's position with regard to the admission of the DNA test results is that Petitioner fails to state a cognizable habeas corpus claim.

Respondent is correct, as Sixth Circuit has stated that

> "[e]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Generally, state court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977*)); see also Spencer v. Texas*, 385 U.S. 554, 563 64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

*Seymour*, 224 F.3d at 552. Thus, state court evidentiary rulings are cognizable as grounds for habeas relief only if the admission of the evidence is so egregious as to deny a fair trial and infringe on a defendant's due process rights. The Court sees nothing which could have reached an error of constitutional magnitude by the introduction of the DNA evidence and, therefore, finds that the claim is not a cognizable habeas corpus claim. *See Estelle v. McGuire*, 502 U.S. at 67.

### B. Procedural Default

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas

court to the state courts. 28 U.S.C. § 2254(b)(1). The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982) (emphasis added), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). And the claim must be presented in a procedural context where a merits review is likely. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A prisoner who has failed to present a federal claim to the state courts and who is now barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). There are two types of procedural default. The first category rests upon "technical" exhaustion of state remedies. This kind of procedural default applies to a petitioner who failed to raise his claim in the state courts and who is now barred by a state procedural rule from returning with his claim to those courts. Thus, he has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and therefore is deemed to have exhausted his state remedies, but to have done so by way of a procedural default. *Id.* The second type of procedural default happens where a petitioner has actually presented his federal claim to the state courts and where those courts have declined to address it due to his failure to meet a state procedural requirement. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on appeal); *Reed v. Ross*, 468 U.S. 1 (1984) (same).

Both types of procedural default foreclose federal habeas review, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Coleman*, 501 U.S. at 732. Cause can be shown where interference by state officials has rendered compliance with the

rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray*, 477 U.S. at 488.

A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). A petitioner can also obtain review of a procedurally defaulted claim by demonstrating that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495-96.

For purposes of organization, the Court has described separately each claim and the Warden's response but has discussed together Smith's claims of cause for his procedural defaults.

### C.  The Claims

#### a.  Unconstitutional Indictment by a Biased Grand Jury (Ground One)

Petitioner asserts he was tried on an improper indictment due to members of the grand jury being related to the victim of an aggravated burglary of which Petitioner had previously been convicted. Respondent argues that this claim was first raised in Smith's *pro se* state post-conviction petition and again in his amended post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent further argues that the TCAA held the claim to have been waived, which constitutes a procedural bar to federal review.

#### b.  Failure to Suppress an Involuntary Confession (Ground Two)

In this claim, Smith alleges that his statement, which was introduced into evidence at his trial, was obtained through coercion and threats and, thus, was involuntary and that, for several reasons, it should have been suppressed. Respondent argues that this precise claim was not raised on direct appeal and that, while it was raised in Smith's amended post-conviction petition, it was only raised in his post-conviction appeal in a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent suggests, as he did with respect to the previous claim, that TCAA's holding that the claim had been waived amounts to a procedural bar to habeas review.

### c. Petit Jury was Biased (Ground Three)

In his third claim, Smith asserts that members of the petit jury which heard his case were biased against him and predisposed to convict him. Respondent maintains that this claim was first raised in Smith's *pro se* state post-conviction petition, as well as in his amended post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent further argues that the TCAA held the claim to have been waived, which constitutes a procedural bar to federal review.

### d. Conflict of Interest - Prosecutor (Ground VII)

Smith asserts that the prosecutor, who was married to a police officer who is a blood relative of the victim, did not recuse herself, even though she suffered from a conflict of interest, could not be objective, and was biased against him. This too, according to Petitioner, violated his rights to due process and to equal protection. Respondent argues that this claim was first raised in Smith's amended state post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by

denying "all grounds raised" in his petition. Respondent further argues that the TCAA held this claim to have been waived, which constitutes a procedural bar to federal review.

### e.   Ineffective Assistance of Counsel  (Ground VIII)

Smith maintains that his attorney gave him ineffective assistance by: (a) failing to file a motion for discovery; (b) allowing one of the prosecuting officers to take charge of the petit jury after it was sworn; (c) failing to object to the composition of the grand jury; (d) allowing a member of the petit jury to intermingle with state's witnesses during the trial; (e) failing to obtain Petitioner's consent to an amendment of an indictment and by agreeing to the amendment in the first place; (f) failing to protect Petitioner's right to a preliminary hearing; (g) failing to take any remedial action to protect Petitioner against illegally seized evidence; and (h) failing to protect Petitioner's right to an appeal by ensuring that an adequate appeal record was transmitted to the TCCA.

The Warden asserts that these claims of ineffective assistance were first raised either in Smith's state post-conviction petition or in his amended state post-conviction petition, but only presented to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent further argues that the TCAA held the claim to have been waived, which constitutes a procedural bar to federal review.

### f.   Improper Venue (Ground X)

In this claim, Smith asserts that his constitutional right to a trial by jury was violated by the waiver of jurisdictional issues when his Carter County and Unicoi County cases were consolidated for trial in Unicoi County, without his consent.

Respondent maintains that Petitioner did not raise this claim as a ground for relief either

in his state post-conviction petition or in his amended state post-conviction petition, but only presented it to the TCCA during his post-conviction appeal as a catch-all claim that the post-conviction court erred by denying "all grounds raised" in his petition. Respondent concludes that since this claim was not raised on direct appeal and since the TCAA, on post-conviction appellate review, held the claim to have been waived under an independent and adequate state procedural bar, Petitioner has committed a procedural default, which forecloses habeas corpus review.

### g. Improper Conviction ("Other Grounds")

Smith's final claim in the category of procedurally defaulted claims is that Count Three in the Unicoi County indictment, which alleged that he aided and abetted the aggravated rape of the victim, only charged the perpetrator of the rape, and not Petitioner himself. Respondent asserts that this claim is being raised for the first time in this federal habeas corpus proceeding, has never been presented to the state courts, that Smith's return to the state courts with his claim is precluded by the Tennessee's post-conviction statute of limitations, as well as the statutory restrictions for filing successive state petitions, and that therefore, while the claim is technically exhausted due to the lack of any available state remedies, it, at the same time, has been procedurally defaulted.

### D. Analysis (Cause)

As noted, a prisoner who did not offer a federal claim to the state courts and who has no available state court remedies left or who offered the claim but the state courts refused to entertain it due to a procedural rule has committed a procedural default and must show cause and prejudice to obtain habeas review.

Smith alleges, as cause, that the failure to raise any of his habeas corpus grounds previously "in any other court, state or federal" was due to the denial of effective assistance of

13

counsel (Doc. 1, p. 22). Beyond this blanket assertion that counsel was ineffective because he did not present to the state courts every claim raised in the instant petition, Smith does not point to any specific error allegedly made by his trial or appellate counsel or, for that matter, his post-conviction counsel. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). Nor does Smith explain how he incurred prejudice as a result of any error. *Id*. at 693 (holding that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice").

The allegations, which the Court also infers are being made with regard to post-conviction counsel, also fail for another reason. An analysis of a claim that a petitioner had ineffective assistance from his post-conviction counsel begins with the decision in *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In *Finley*, the Supreme Court held that there is no constitutional right to an attorney in state post-conviction proceedings. *Id.* at 551 ("We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process."); *see also Evitts v. Lucey*, 469 U.S. 387, 397 n.7 (1985) ("Of course, the right to effective assistance of counsel is dependent on the right to counsel itself.") (citation omitted); *Ritchie v. Eberhart*, 11 F.3d 587, 591-92 (6th Cir. 1993) (plurality opinion by Nelson, J.), *cert. denied*, 510 U.S. 1135 (1994). And, generally, the ineffective assistance of counsel does not excuse a state procedural default. *Coleman*, 501 U.S. at 755.

Citing to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Smith presents another argument

to satisfy the requirement that he show cause to overcome the procedural default of his ineffective assistance claims. *Martinez* articulated a limited equitable exception to the procedural default rules by holding that, where state law requires ineffective-assistance claims to be raised during initial collateral review, post-conviction counsel's ineffective assistance in those proceedings excuses a procedural default of a substantial claim that trial counsel gave ineffective assistance. *Id.* at 1320. Under *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), Tennessee has such a state law, and therefore *Martinez* applies to Tennessee convictions. *Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014).

Smith maintains that his state-appointed post-conviction attorney gave him ineffective assistance during his post-conviction appeal by failing to present the ineffective assistance of trial counsel claims to the TCCA (Doc. 21, pp. 23, 27, and 29-30).[3] However, by its very terms, the *Martinez* exception does not apply to a post-conviction appellate procedure—only to those errors in the "initial-review collateral proceeding." *Wallace v. Sexton*, No. 13–5331, 570 F. App'x 443, 453 (6th Cir. 2014). Therefore, *Martinez* provides no refuge for Smith's claims of cause and no reason to excuse the procedural default of his ineffective assistance claims.

Since Petitioner has failed to show cause to excuse the procedural default of all the above claims, including those involving ineffective assistance of counsel, federal review is foreclosed.

### E. Adjudicated Claim

---

[3] Smith alleges in his reply that post-conviction counsel gave him ineffective assistance by failing to raise his claims of ineffective assistance of trial counsel "where they should have been raised," without identifying the state court "where [those claims] should have been raised" (Doc. 21, pp. 37, 42, and 46). However, since all the claims of ineffective assistance of trial counsel presented in this habeas corpus proceeding were offered either in Smith's state post-conviction petition or in his amended state post-conviction petition, any procedural default necessarily would have occurred during his later post-conviction appeal in the TCCA.

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id.* at 411; *see also Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard… 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102, 131 S.Ct. at 786). To prevail on a claim which was resolved on the merits in state court, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U. S. at 103. Put more simply, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, No. 14-618, 2015 U.S. LEXIS 2123, at \*6 (U.S. Mar. 30, 2015).

Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has offered no such evidence.[4]

### 1. Denial of Funds for a Psychological Expert (Ground Eleven)

In the only claim in the adjudicated-claims grouping, Petitioner maintains that the trial court denied him his constitutional right to present a defense by denying him funds to employ a private psychiatrist who would conduct an appropriate examination and assist in the evaluation, preparation and presentation of his insanity defense. Smith appealed this alleged constitutional violation first to the TCCA and, upon being denied relief, to the TSC. *See Ruff v. State*, 978 S.W.2d 95 (1998). The factual recounting, which lends context to this issue, is taken from the TSC's opinion on direct review.

> On December 31, 1992, prior to trial and pursuant to Smith's motion, the trial court ordered Smith to undergo a mental evaluation at the Watauga Mental Health Center for the purpose of determining (1) his sanity at the time of the offense, and (2) his competency to stand trial. Jerry Matthews, Ph.D., evaluated the defendant for the Watauga Mental Health Center. He recommended further evaluation at Middle Tennessee Mental Health Institute (MTMHI). The staff at MTMHI observed and

---

[4] Smith makes a blanket challenge to the state court's factual findings (Doc. 1, p. 23; Doc. 15, p.5), but does not specify which of the state court's factual findings he is attacking.

examined Smith between March 31, 1993, and April 29, 1993. They concluded that Smith was competent to stand trial and sane at the time of the offenses. Their report noted their conclusions that Smith malingered and attempted to give an impression that he was mentally ill.

In August 1994 another staff member from the Watauga Mental Health Center, Richard Kirk, examined Smith at the Unicoi County Jail. Kirk had access to the report from MTMHI at the time he examined the defendant. He concurred in MTMHI's findings and concluded that Smith was malingering.

Two days before trial was to begin, Smith's counsel filed a motion requesting an independent psychiatric evaluation. In the motion, counsel alleged that the initial report from Matthews was evidence that sanity was a significant factor in Smith's defense. He sought funds to employ an independent psychiatrist to conduct an examination and to assist in the evaluation, preparation, and presentation of the defense of insanity. The motion was heard and denied on the first day of trial. The trial court denied the motion on the grounds that Tenn.Code Ann. § 40–14–207 (Supp.1994), governing expert services in capital cases, applied to capital cases only. Further, the court noted that Smith had already been evaluated and was found competent to stand trial and sane when the offenses were committed.

*Id.* at 100-01 (footnotes omitted).

In considering Petitioner's claims, the TSC cited to *State v. Barnett*, 909 S.W.2d 423 (Tenn. 1995), for its conclusion that the trial court had not abused its discretion in denying Smith funding to employ an independent mental health expert to evaluate him for a third time. The components of that ruling which rest on state law are not matters for review by this habeas court. As observed earlier, federal habeas courts do not sit "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. at 67-68. The question as to whether state law was violated when the trial court declined to grant Petitioner funds to pay another mental health expert is not a cognizable issue and calls for no further discussion. There is a constitutional issue, however, underlying Smith's request for access to a psychiatrist, with which this Court is concerned.

18

**2. Denial of Access to a Psychological Expert (Ground Eleven)**

In its discussion of the constitutional aspects of Smith's request for a psychiatric expert, the TSC cited to *Ake v. Oklahoma*, 470 U.S. 68 (1985). *Ake* held that an indigent defendant who shows that sanity at the time of the offense is likely to be significant factor at trial must be afforded access to a competent psychiatrist, but limited that right to one competent psychiatrist, whom the state could select, without considering a defendant's personal preferences. *Id.* at 78-79 and 83; *Wogenstahl v. Mitchell*, 668 F.3d 307, 340 (6th Cir. 2012). ("*Ake* entitles [the petitioner] to a competent psychiatrist only, not a psychiatrist of his choosing.").

The *Ake* rule is triggered only where a defendant makes a threshold showing that his mental condition is "seriously in question." This showing is made by supplying particular facts demonstrating the necessity of a psychiatrist, not just by making general allegations of need. "In order for a defendant's mental state to become a substantial threshold issue, the showing must be clear and genuine, one that constitutes a close question which may well be decided one way or the other." *Liles v. Saffle*, 945 F.2d 333, 336 (10th Cir. 1991). As noted, the TSC also cited to *State v. Barnett*, which extended the holding in *Ake* to a non-capital indigent defendant.

*Ake*, issued on February 26, 1985, provided the well-established rule in Supreme Court cases on September 28, 1998, when the TSC rejected Petitioner's psychiatric-expert claim in his direct appeal. *See, e.g., Miller v. Colson*, 694 F.3d 691, 696 (6th Cir. 2012). Thus, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court.

The question then becomes whether it was it an unreasonable application of *Ake* for the state court to decide that relief was unwarranted. The TSC observed that Smith had already received a state-provided "full psychiatric evaluation" and that, seemingly, "his dissatisfaction

with the results of that evaluation prompted him to request another evaluation." *Ruff*, 978 S.W.2d at 101. The TSC went on to hold that Smith had not made the threshold showing of particularized need for the additional psychiatric assistance, absent any demonstration of any evidence to be adduced from Smith's family or description of "any other particularized need for another evaluation." *Id*. As the TSC explained, Smith's only argument was that "the MTMHI's reports were inconsistent and invalid, and that he needed another evaluation in order to determine if the tests given by MTMHI were valid." *Ibid*. Concluding that "[c]ourts are not required to find the defendant an expert who will support his theory of the case," *Id*. at 101 (citing *Ake*, 470 U.S. at 83; *Barnett*, 909 S.W.2d at 431), the TSC found ultimately that Smith had not shown a constitutional violation. *Id*. at 101n.9.

As noted, *Ake* limited the state's obligation to the "provision of one competent psychiatrist" and did not require the provision of an expert opinion which is favorable to a citizen accused. *Pawlyk v. Wood*, 248 F.3d 815, 823 (9th Cir. 2001) ("Significantly, given the defendant's limited right to access a single psychiatrist, he lacks the right to appointment of a second psychiatrist when the originally appointed psychiatrist advises against the viability of a particular defense.").

Under the facts and circumstances in Petitioner's case, he has failed to show that the TSC's disposition of his claim was an unreasonable application of *Ake*. Because Smith has failed to direct the Court to any Supreme Court precedent which "applies to the circumstances presented in this c[laim]," federal habeas corpus relief is unavailable to him under 28 U.S.C. § 2254(d)(1). *Woods v. Donald*, 2015 U.S. LEXIS 2123, at *10.

## IV. CONCLUSION

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus

will be **DENIED** and this case will be **DISMISSED**.

## V.    CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of certain claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**A separate judgment will enter**.


**ENTER:**


_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE